CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

December 02, 2024

LAURA A. AUSTIN, CLERK
BY   s/ S. MELVIN
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| CLAUDE DAVID CONVISSER | ) | |
| | ) | |
| and | ) | |
| | ) | |
| POP DIESEL AFRICA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. <u>3:24-cv-00083</u> |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY OF VIRGINIA | ) | |
| <u>Serve</u>: | ) | |
| President Jim Ryan | ) | |
| Madison Hall | ) | |
| 1827 University Ave. | ) | |
| Charlottesville, Virginia 22903, | ) | |
| | ) | |
| Defendant. | ) | |

### VERIFIED COMPLAINT

I declare under penalty of perjury that the following is true to the best of my knowledge, speaking of myself in the third person as plaintiff Claude David Convisser:

Plaintiffs Claude David Convisser, representing himself, and plaintiff POP Diesel Africa, Inc. ("POP Diesel" or "the Company"), by its General Counsel the same attorney at law (together "plaintiffs"), state as their complaint against the University of Virginia ("UVA," "the University," or "defendant") as follows:

### OVERVIEW

1.      Plaintiffs will suffer immediate and irreparable harm if this Court does not grant their emergency motion for a temporary restraining order filed herewith, which they ask this Court to do without a hearing or at a telephonic or in-person hearing within the next couple of

days.  For no valid reason that plaintiffs have been able to discover or discern, defendant

University has closed its public Law Library to everyone but law students, faculty and staff

effective December 2, 2024, a new policy which plaintiffs allege unconstitutionally retaliatory,

discriminatory against the particular viewpoint they are expressing in their petitioning activity,

and intended at least in part to prevent their counsel from exercising their First Amendment-

protected right to petition this Court in Civil Action No. 3:24-cv-72-JHY, <u>Claude David

Convisser and POP Diesel Africa, Inc. v. Exxon Mobil Corporation, et al.</u> (filed September 9,

2024) ("the Exxon Mobil lawsuit"), which lawsuit presents matters of public concern.  If this bar

on access to the University's Law Library continues, they will be unable to respond to pending

memorandums and motions already filed by numerous opposing counsel and expected to be filed

today and in the coming days, because there are no alternative, public law libraries available to

them to conduct the necessary legal research.  Presently impoverished and homeless, they do not

have the means to travel or relocate to another city on a daily basis to gain access to such a

public law library, nor the means to subscribe or pay for online legal research services that have

always to date been available at no charge to members of the public at the University's Law

Library.

      2.    Plaintiffs certified in the motion pursuant to Rule 65(b)(1)(B) of the Federal Rules

of Civil Procedure to (a) hand-delivering a courtesy copy of this complaint, motion and

memorandum in support to the University Counsel's Office concurrently with filing this legal

action and (b) that they have a process server standing by to serve the summons and complaint as

soon as the Clerk certifies the proposed summons.

## SUBJECT MATTER JURISDICTION

3.      Original subject matter jurisdiction in this Court is premised on Title 28 United States Code section 1331 and the causes of action arising under Title 42 United States Code section 1983 for defendant the University of Virginia's, by its School of Law's, unconstitutional restriction on plaintiffs' right to access to its Law Library in order to be able to exercise their constitutional right to petition this Court in the Exxon Mobil lawsuit, and its unconstitutional restrictions on plaintiff Claude David Convisser's right to gain access to all of the public areas of the University of Virginia Medical Centers and Medical School.

4.      Original subject matter jurisdiction in this Court is also premised on Title 28 U.S.C. section 1332 on diversity of citizenship between the plaintiffs and defendant and the amount in controversy exceeding $75,000, exclusive of interest and costs.

5.      Plaintiff Claude David Convisser is a citizen of South Dakota and plaintiff POP Diesel Africa, Inc. is registered in Delaware, with its principal place of business in South Dakota.

6.      Defendant University of Virginia is a citizen of Virginia.

## PERSONAL JURISDICTION

7.      This Court has personal jurisdiction over the University of Virginia for its actions taken in Charlottesville.

## VENUE

8.      Venue lies properly in this Court pursuant to Title 28 U.S.C. section 1391(b)(1) and 1391(b)(2).

**PARTIES**

Plaintiffs Claude David Conviser and POP Diesel Africa, Inc.

9.     Plaintiff Claude David Conviser is the Chairman, sole Director, Chief Executive Officer, and at this time, sole shareholder in trust for smallholder farmers in tropical areas of the world of plaintiff POP Diesel Africa, Inc.  He also serves presently as General Counsel.

10.     Plaintiffs Claude David Conviser and POP Diesel are the world's foremost advocates for the use of pure plant oil, which is straight vegetable or fruit oil like the cooking oil in your kitchen, to power compression ignition (diesel) engines, for which they secured the first-ever approval from the U.S. Environmental Protection Agency ("EPA") and the U.S. Department of Transportation, in June 2013 to run in used engines, and which they call POP Diesel Fuel.

11.     Plaintiff Claude David Conviser is also an attorney at law on active status and in good standing with the Virginia State Bar, a 1991 honors graduate of the University of Virginia School of Law who then clerked for Judge Albert V. Bryan, Jr., of the Alexandria Division of the U.S. District Court for the Eastern District of Virginia, and then conducted a solo law practice in Alexandria from 1993 to 2004 before joining plaintiff POP Diesel in 2007.

12.     At all times and in all capacities stated in this complaint while engaged in business activities, plaintiff Claude David Conviser was acting on behalf of plaintiff POP Diesel Africa, Inc. or one of its predecessor or African affiliate POP Diesel companies which he also ran since January 2008 or presently runs.

13.     The interests of plaintiffs Claude David Conviser and POP Diesel Africa, Inc. are synonymous.  Furthermore, their interests will remain without conflict after other investors contribute capital to plaintiff POP Diesel Africa, Inc.'s pending drive for $100 billion in equity investment, since per the terms of the Stock Subscription Undertaking, even at its fulfillment at

the level of $100 billion, plaintiff Claude David Convisser will continue to own the controlling shares in trust for smallholder, tropical farmers.

14.    Plaintiff Claude David Convisser has been living homeless in the Charlottesville area since late June 2024 due to events set forth in the complaint of the Exxon Mobil lawsuit.  He is presently staying at a homeless shelter run by an organization called PACEM, gets his daily meals at a Charlottesville soup kitchen in the morning and at the PACEM location in the evening, and since July 2024, has been doing all of his legal work on behalf of plaintiff POP Diesel and himself in the Exxon Mobil lawsuit at the University of Virginia Law School Library.

15.    The only reason plaintiffs are able to file this instant lawsuit without claiming *in forma pauperis* status is that plaintiff Claude David Convisser received a modest extension of personal credit on November 27, 2024.

<u>Defendant University of Virginia</u>

16.    The University of Virginia is a publicly-funded, -regulated, and -staffed university owned by the Commonwealth of Virginia, with its main campus in Charlottesville.  Its School of Law is a public institution dedicated to teaching and learning the profession of law.

17.    The Law Library ("the Law Library") has, except perhaps for periods during the COVID pandemic, always been open to members of the public, as well as students, faculty and administrators of the School of Law, until the events described next.

18.    The University of Virginia is legally responsible for the actions of UVA Law School and its Law Library.

**FACTUAL ALLEGATIONS**

19.    Plaintiffs reiterate paragraphs 1 – 18 and these paragraphs are incorporated as if re-stated herein.

**Barring from UVA Law Library**

20.    Plaintiff Claude David Convisser owns a laptop computer on which he does all his legal writing.  However, to safeguard its security and well-being, he never connects it to the Internet, because of the high risk of sabotage of his Internet telecommunications and computer hardware described in the complaint in the Exxon Mobil lawsuit.  For the same reason, he owns a smart phone, but does not have any data capability on it; he uses it only to make and receive telephone calls and SMS text messages.

21.    Plaintiffs do not have sufficient financial resources at present to subscribe to or pay for an online legal research service such as Westlaw or Lexis.

22.    In any event, plaintiff Claude David Convisser attended UVA Law School and learned to conduct legal research when Westlaw was just getting started.  He has since then remained "old school" in his legal research methods, preferring to start any legal research project by conducting book research relying on annotated reference works to federal statute and caselaw, and then resort to Westlaw or LEXIS, rather than resorting initially to the algorithm of Lexis, which is the only subscription online legal research tool available to members of the public at the UVA Law School Library.  Exhibit 1 is a photo of his customary work station in the UVA Law Library in preparation for and drafting of this complaint.

23.    Since July 2024, plaintiff Claude David Convisser has worked daily on the second floor of UVA Law Library, sitting in front of one of three computer terminals located next to each other opposite the main reference desk and near the top of the staircase that Library makes available to members of the public at no charge and without restriction.  These terminals permit Internet access only; they do not permit any word processing or other applications, except notes in Wordpad.  Exhibits 2 and 3 are photos of the three public terminals.  Occasionally, when he

has not needed access to any online resources, he has worked at a table in the back of the book stacks, pictured in Exhibit 4.

24.     Ninety-five percent of the time, plaintiff Claude David Convisser is the only person working at any of the three public-access terminals in the Law Library.  Law students connect to other terminals spread throughout the Law Library, rather than these public access terminals.  Occasionally, a student from another school of UVA, or another member of the public like plaintiff, will come and sit down to use one of the other two public terminals next to the one he is using.

25.     Plaintiff Claude David Convisser has had zero contact and interaction with any law students, except those who work at the Law Library's circulation desk and one law student on one day who invited him to use the facsimile transmission machine located in the Clinic offices of the Law School.  Twice he attended panel discussions advertised within the Law School around the lunch hour, the first time formally r.s.v.p.'ing to the administrative secretary who organized the event, who welcomed him as an interested alumnus, and the second time asking a question from the audience when nobody else had any questions, for which question two panelists thanked him afterwards.

26.     Plaintiff Claude David Convisser maintains friendship with one of his former law professors whom he has twice since October 5, 2024 visited in his office on the third floor of the Law School.

27.     Both times he visited this professor in his office, a woman whose first name is Diddy who is a Special Assistant to the Dean of the Law School intercepted him on the third-floor hallway, asked what he was doing there, attempted to prevent him from meeting with his professor friend, and interrogated him.

28.    Plaintiff Claude David Conviser informed Diddy, as Law Librarian Rebecca Hawes Owen was also aware, and he later expressly informed the senior secretary to the Law Student Clinics, a woman named Cindy, that he has filed and is working on in the Law Library a major federal lawsuit against Exxon Mobil.  He told Diddy, and Cindy knew from Louise, as Law Librarian Rebecca Hawes Owen must have surmised from seeing him carry one or more bags with him every day, that he is homeless.  Thus, these agents of the University, and their superiors, knew that plaintiffs' cause in this Court is vulnerable to blows that money they do not have cannot alleviate.

29.    The Law Library issued to plaintiff Claude David Conviser a Community Borrower library card, photographed in Exhibit 5.  All of the staff at the circulation desk know him because they kindly safeguard overnight for him a book on federal civil procedure that he has checked out, but that is too heavy for him to lug to-and-fro on his bicycle, which is his customary and only means of transport.  The circulation and reference desk staff at the Law Library have always been very helpful and courteous to him.

30.    There have never been any negative reports or complaints about plaintiff Claude David Conviser's conduct or activities while in the Law Library or otherwise inside the Law School that have ever been reported to him, except once, as follows.

a.    As plaintiff Claude David Conviser was preparing to draft the complaint in the Exxon Mobil lawsuit, he took a nap on the floor of one of the vestibules near the front entrance to the Law School.  University Police arrived, ordered him off the property as a trespasser, and banned him from all University property except the UVA Hospital Emergency Room.

      b.      He appealed in writing to Chief of University Police Timothy Longo, who rescinded the no trespass order in its entirety within two or three days.

31.      On the afternoon of Tuesday, November 26, 2024, as plaintiff Claude David Convisser was preparing to leave for the day and the Thanksgiving Holiday, Law Librarian Rebecca Hawes Own told him the following:

      a.      The Office of the Dean of the Law School had come forth with a new policy barring all members of the public who are not law students, faculty or staff from access to the Law Library starting Monday, December 2, 2024.

      b.      He would still be able to check out books from the circulation desk, if he told its staff which book he is looking for and they went to find it on the stacks.

32.      Plaintiff Claude David Convisser asked Law Librarian Rebecca Hawes Owen if he had done anything wrong and this policy was directed at him.  She replied that it was directed at all members of the public who were not law students, faculty or staff.

33.      Plaintiff Claude David Convisser asked if she would give him the foregoing news in writing.  She said she would.

34.      When plaintiff Claude David Convisser informed Law Librarian Rebecca Hawes Own that he would bring an immediate lawsuit challenging the new policy and would seek an injunction, she thanked him.

35.      The Law Library was closed from Wednesday, November 27, 2024 through Friday, November 29, 2024.  It re-opened on Saturday, November 30, 2024 at 8 a.m.  Plaintiff Claude David Convisser arrived shortly after its opening hour and worked all day to make two filings just before midnight that night in the Exxon Mobil lawsuit.

36.    An electronic notice appeared on the video monitor opposite the circulation desk on November 30, 2024 that advised of the Law Library's closure beginning December 2, 2024 to members of the public and lasting through December 20, 2024.  This notice is captured and stated in the photograph that is Exhibit 6.

37.    Note that Law Librarian Rebecca Hawes Owen did not tell plaintiff Claude David Convisser on November 26, 2024 that the new policy barring members of the public from the Law Library would be in effect only during exam period.

a.    Law school exams do not begin, in any event, until December 9, 2024.

b.    Therefore, any policy reason for barring members of the public from the public Law Library that is related to the conduct of law school exams is irrational, if it starts on December 2, 2024.

38.    Paper notices stating the same appeared on the entry to the Law Library's front doors later in the day on November 30, 2024, which are photographed in Exhibits 7 and 8.

39.    On November 30, 2024, while working on the Internet at one of the Law Library's three public access computer terminals where he normally worked, plaintiff Claude David Convisser's gmail account and PACER account were hacked and the passwords changed, blocking him out.  He had to contact the administrator of plaintiff POP Diesel's gmail account to restore his access, which means he had to pay on a Saturday a surcharge for this information technology ("IT") consultant's emergency assistance.  He was able to restore and regain access to his PACER account upon changing the password himself.

40.    One of the three public access computer terminals has not been able to gain access to the Internet, including LEXIS, for several weeks.  While drafting this complaint on December 1, 2024, the second terminal which plaintiff Claude David Convisser was using to conduct online

legal research to prepare this lawsuit stopped functioning.  He tried the third terminal, but it would not acquire an Internet signal.  This marked the first time since he began working at the Law Library in early July 2024 that all three computer terminals intended for public access became non-functioning at the same time.

41.    The Exxon Mobil lawsuit is a matter of public concern.  Plaintiffs' *ad damnum* is for $500 billion.  They allege that Exxon Mobil, aided by more than thirty other defendants, has conspired under state and federal law to maliciously block investment in and all forward business progress of plaintiff POP Diesel.  They allege that Exxon Mobil remains inalterably opposed and aggressively hostile to alternatives such as plaintiff POP Diesel's Fuel and the Company's patented and EPA-approved engine enabling equipment, which they submit can make a meaningful contribution towards curbing global warming.  The Exxon Mobil lawsuit was the subject of a press conference plaintiff Claude David Convisser conducted in Bamako, Mali on October 3, 2024, which was reported to the international press and media there.  The Exxon Mobil lawsuit will likely receive press and / or media coverage in Virginia and the United States before it is all over with.

42.    On November 25, 2025, plaintiffs made an electronic filing in the Exxon Mobil lawsuit, their consolidated opposition to all of the pending motions to dismiss (Document 178), in which they addressed the representation of one of the defendants, who works in IT for UVA, though apparently not at the Law School, by a Senior Assistant Attorney General of Virginia. They wrote:

> [P]laintiffs note that special counsel for defendant David R. Butler is a high-ranking Assistant Attorney General of the Commonwealth of Virginia.  This defense at taxpayer expense raises the specter that defendant David R. Butler was monitoring plaintiffs at the breakfast restaurant, prevented his brother-in-law Charles Steppe from helping them find investment, and

11

participated in repeatedly changing his email password via the University of Virginia ("UVA") School of Law computer terminals as official acts ancillary to his state job as an information technology specialist at [] UVA. Plaintiffs would never have guessed that the Attorney General of Virginia would step in to defend this defendant, but since it happened, it is a reasonable inference that the same connection that bedeviled Richmond lobbyist defendant Elizabeth Ann Hughes, defendant Exxon Mobil's intelligence and security service, caused him to get involved and was giving him directions. The amended complaint, at paragraph 112, paints defendant Exxon Mobil's intermediary to defendant David R. Butler as Retired Government Security Agent Intelligence Service, whom plaintiffs allege is a widespread association of individuals, in whose membership he as an IT professional qualifies (amended complaint, ¶ 64), who also gave direction to other defendants such as Ray W. Hughes and John J. Davidson.

43. The fact that Law Librarian Rebecca Hawes Own informed plaintiff Claude David Convisser of the barring of himself and other members of the public from the Law Library the very day after plaintiffs made the afore-mentioned electronic filing indicates that word had reached the Law School Dean's Office about the foregoing allegations quoted from plaintiffs' brief in the Exxon Mobil lawsuit and the new policy was directed at and retaliatory against plaintiffs.

44. On Friday, November 1, 2024, a third-year UVA law student named Louisa appeared at the soup kitchen in Charlottesville where plaintiff Claude David Convisser has his breakfast every morning. She offered him the use of two facsimile machines in the Law School Clinics from which he could send and receive plaintiff POP Diesel's Investment Prospectus, a method of authenticating them for distribution to potential investors.

45. The following Friday, November 8, 2024, Louisa returned to the Charlottesville soup kitchen and told plaintiff Claude David Convisser that they would send the facsimile transmission from and to the Law School Clinics office that day.

       a.     She interviewed him while at the soup kitchen, ostensibly to make him a client of the Law School Clinics, thus providing justification for allowing him to use two of their fax machines.

       b.     Upon reaching the Law School Clinics office, the senior secretary, named Cindy, seemed opposed to Louisa's helping plaintiff Claude David Convisser to transmit the 144-page fax from one of their machines to a second one down the hall.  Afterwards, Cindy told him that she was afraid the University or the Law School Clinics, by having its fax number stamped on the fax, might be associated with whatever he had sent by facsimile transmission.

       c.     As a result, plaintiff Claude David Convisser informed her that he was sure Exxon Mobil would know he had sent the fax from the Law School Clinics machine, because they surveille him closely and know everything he is doing.

       d.     Cindy, who was taking notes of their conversation, immediately stood up and left her office to go inform the Director of Law School Clinics about what plaintiff had told her.

46.     On or around November 20, 2024, Prof. Calle Jaffe, who directs the Law School's Environmental Law Clinic, came up to plaintiff Claude David Convisser while he was seated on a bench in the hallway of the Law School and told him that, as a result of Louisa's having invited him to use the fax machine at the Law School Clinics office, the Law School had adopted a new policy governing access by members of the public to what he called "private" areas of the Law School, in which term he included the Law School Clinics.

       a.     He did not say what this policy was.

b.      Somebody higher up in the Law School hierarchy, such as the Dean's Office, instructed Prof. Calle Jaffe to find plaintiff Claude David Convisser that day and inform him as he did, as some kind of a warning.

47.     The day after Prof. Calle Jaffe spoke to plaintiff Claude David Convisser, Diddy from the Law School Dean's Office came up to him as he was entering the Law Library and smirked and sneered at him, but did not say anything.

48.     A male L.L.M. or Ph.D. student and plaintiff Claude David Convisser whom plaintiff has spoken to on many occasions, but does not know his name, had casual conversation on December 1, 2024 in the hallway outside the Law Library about the new policy barring the public from the Law Library between December 2 and 20, 2024.  This student stated:

a.      He has taken exams at the Law School in the past.

b.      Law students are required in nearly all instances to remain in the exam room during administration of an exam.  There are no exams administered inside the Law Library.

c.      Due to concerns about the use of artificial intelligence tools, many professors still administer exams by blue book in which the students must hand-write their answers and essays.

d.      The policy they were discussing is brand new and was not in place during the last exam period in May or so, 2024.

e.      He did not know or understand the reasons for the new policy, but suspected it is targeted against undergraduates who come and use the Law Library, even though plaintiff Claude David Convisser, from his observation without speaking to any students, is not sure there are actually very many such undergraduates who do so.

49.    Another male law student told plaintiff Claude David Convisser as they entered the Law School building together on December 1, 2024 that exams do not start until December 9, 2024 and many professors continue to teach their courses in the week before, coming up after filing of this complaint.

### Barring from UVA Medical Center and School

50.    In preparation for filing the Exxon Mobil lawsuit, plaintiff was looking for an expert witness who was a gastro-enterologist, who might be willing to give a short written statement in support of a motion for an emergency temporary restraining order plaintiffs intended to file at the start of the lawsuit concerning one aspect of the case.

51.    Plaintiff Claude David Convisser visited the Digestive Health Clinic at UVA Hospital in Charlottesville and spoke with Yvonne Jarvis whom he was told was the office administrator, but turned out to be the head nurse.  Nurse Jarvis said she would speak with the doctors about his inquiry and get back to him.

52.    When plaintiff Claude David Convisser did not hear from Nurse Jarvis from the Digestive Health Clinic by one week later, he emailed her, to no avail.

53.    On August 16, 2024, plaintiff Claude David Convisser visited the Digestive Health Clinic and asked the receptionist if he could please have a word with Nurse Jarvis.  The receptionist said she had gone for the day.  Plaintiff then said in an off-hand way, and not in any kind of a demanding tone, "In that case, I would like to speak with a doctor."

54.    Before plaintiff Claude David Convisser could ask the receptionist of the Digestive Health Clinic if this would be possible, and to clarify that he only desired to speak to a doctor for just a few minutes, and did not need a medical exam, she immediately stood up and said, "Let me go see if any are available," left her chair, and walked into the back area of the

Digestive Health Clinic.  There were no other witnesses within earshot of their brief conversation.

55.     Plaintiff Claude David Convisser took a seat in the reception area of the Digestive Health Clinic to await the receptionist's return.

56.     After around 20 to 30 minutes, during which time the receptionist of the Digestive Health Clinic did not return to her chair at the front reception, two University Police Officers entered the reception and asked plaintiff Claude David Convisser to step outside.

57.     They said he had violated University policy by demanding to see a doctor and gave him a no trespass order barring him from the University Hospital and Medical School without a pre-arranged appointment, except for the emergency room.

58.     Plaintiff Claude David Convisser appealed this second no trespass order in writing to Chief of University Police Timothy Longo, but never heard anything back in reply. Therefore, it remains in place today.  His appeal letter is Exhibit 9.

59.     In his appeal letter, Exhibit 9 hereto, plaintiff Claude David Convisser argued that the receptionist's conduct indicated that the entire exchange had been a set-up.  Opponents of his business, in service to the interests of Exxon Mobil and trying to defend it in the lawsuit they knew plaintiffs were preparing, knew he had entered the UVA Medical Complex and was going to visit the Digestive Health Clinic.  They alerted the receptionist beforehand how to handle her conversation with him, so that he could be arrested and barred from the UVA Medical Complex for seeking any follow-up after hearing from her that Nurse Jarvis was not there at that time.

## LEGAL CLAIMS

### COUNT 1

**Retaliation for Exercise of Plaintiff's First Amendment Right
to Petition the Government for Redress of Their Grievances**

**42 U.S.C. § 1983**

60.    Plaintiffs reiterate paragraphs 1 – 59 and these paragraphs are incorporated as if re-stated herein.

61.    Defendant the University of Virginia adopted a policy barring all members of the public who are not law students, faculty or staff from remaining in the Law School Library in part in retaliation for plaintiffs' exercise using this public facility and resources of their right under the First Amendment of the U.S. Constitution to petition the U.S. Government by this Court for redress of their grievances.

62.    Indications of the University's motivation in part to injure plaintiffs' exercise of their right to petition this Court are the following:

      a.    the constant suspicious, hostile and intrusive attitude of Diddy, the Special Assistant to the Dean of the Law School;

      b.    the first-ever malfunction of all Internet access on Law Library public access computer terminals and therefore deprivation of online research tools during the preparation of this complaint and accompanying emergency motion for a temporary restraining order;

      .    c.    the corresponding and concurrent hacking of plaintiff Claude David Convisser's email and PACER accounts and alteration of his gmail and PACER passwords by someone in control of the Law Library's public computer access terminals or Internet connection;

      d.     in response to a law student's invitation to plaintiffs to make use of the resources of the Law School Clinics as her client and under her supervision, the establishment of some kind of policy regulating access by members of the public to so-called "private" areas of the Law School, as vocalized by Prof. Calle Jaffe;

      e.     the sudden announcement to plaintiffs and implementation of a new policy barring all members of the public from entering and making use of the Law Library from December 2 to 20, 2024:

      i.     calling it related to exams when exams do not even start until December 9, 2024 and regular class meetings continue until then;

      ii.     occurring the day after plaintiffs raised questions in a court filing they made on November 25, 2024 about a deeper role by the Commonwealth of Virginia by the University in the conspiracies against their business;

      f.     the utter lack of a valid reason for implementing such a ban on all members of the public;

      g.     the particular vulnerability opponents of plaintiffs' business know plaintiffs presently suffer from, and all of the relevant officials at the Law School were aware of, due to plaintiffs' lack of money and thereby the means to avoid the consequences the Law Library's ban metes upon them, and, but not limited to;

      h.     the failure to discuss or offer an exception to their new policy for plaintiffs, whom University officials know are reliant on access to the Law Library to exercise their right to petition this Court, or to inform them of or publicly announce any reasons for the new policy.

63.    Defendant's action is causing and will cause plaintiffs immediate and irreparable injury, deprivation, loss and damage, as follows:

a.    Plaintiffs do not have the financial or transportation means at their disposal to send their counsel to Richmond or northern Virginia to gain access to a public law library there, not once nor every day, as he needs such daily access to keep up with the Exxon Mobil lawsuit.  His prosecution of the Exxon Mobil lawsuit and right to vindicate plaintiffs' constitutional rights to petition the court therein will be crippled, and real prejudice will result to their legal claims and the public interest they pursue, if his access is not restored immediately.

b.    Plaintiff Claude David Convisser is drafting this complaint and an emergency motion for a temporary restraining order in haste, and he fears, inadequately.  But he and plaintiff POP Diesel have no choice. Due to the circumstances set forth above, he faces a time limit of midnight on December 1, 2024, when the Law Library closes, to finish his legal research and writing, having only gained access to this Library the day before, but being for that entire day and evening fully occupied in preparing two urgent filings in the Exxon Mobil lawsuit.

c.    Other defendants in the Exxon Mobil lawsuit have made filings that he faces immediate deadlines to respond to, pursuant to Civil Rule 11(c)(1) of the Local Rules of this Court, which this Court has already ruled applies to briefing of motions in the Exxon Mobil lawsuit, such as:

i.    rebuttal briefs he must write and file by no later than December 7, 2024 to memorandums filed by two sets of defendants on November 30, 2024, Document No's. 184 and 186, opposing plaintiffs' supplemental motion for leave to file a second amended complaint.  He did not have time since filing of those two opposition briefs to look up the cases cited therein in the Law Library's books or its free, online LEXIS service.  He needs access to

19

the Law Library to be restored to be able to file rebuttals informed by relevant law and any critique of authorities cited by defendants;

        ii.    rebuttal briefs he will have to write responding to additional defendants' memorandums opposing the same plaintiffs' motion which he expects will be filed before the deadline ends on December 2, 2024;

        iii.    a response brief due on December 11, 2024 to one set of defendants' motion to quash subpoenas he issued for documents, which motion was filed on November 27, 2024 (Dkt. No's. 182 and 183), which motion to quash he has not even read yet, much less conducted legal research on any cases cited therein, and;

        iv.    rebuttal briefs to any opposition memoranda two sets of defendants may file responding to plaintiffs' motion for partial summary judgment filed and served on them on November 25, 2024.

        d.    Some of the defendants in the Exxon Mobil lawsuit may learn of this lawsuit and take advantage of plaintiffs' disability by filing additional motions and legal papers which plaintiffs' counsel will not be able adequately to research and respond to, if denial of his access to the Law Library continues.

64.    The Law School Dean's Office adopted the new policy and implemented it one week before the start of exam period which it ostensibly is related to, as soon as they feasibly could while making it appear to be facially neutral, in order to cause immediate injury to plaintiffs' ability to exercise their First Amendment right to petition this Court and the U.S. Government.

65.    If plaintiffs did not file this lawsuit, the Law School and University would extend the policy indefinitely, seeking to turn what has heretofore been a library open to all members of

the public into one of the "private" areas of the Law School that the new policy Prof. Calle Jaffe mentioned would allow them to bar members of the public *in toto*, granting exceptions at their will and on their total, unbridled discretion.

66.    The University's new policy barring all members of the public from the Law School Library does not have any rational justification.

67.    The University's new policy barring all members of the public from the Law School Library does not serve a compelling or even a significant state interest and is not reasonably or narrowly drawn to achieve any state end.

68.    The time, place and manner regulation such as the University's new policy barring all members of the public from the Law School Library for an 18-day period, to start, is not narrowly tailored to serve a significant governmental interest.  Nor does it leave open ample alternative channels for legal research and communication of legal information for someone in plaintiffs' position of lacking money to subscribe to or pay for an online legal research service such as Westlaw or LEXIS or drive more than one hour to a public law library in another city, since there is not any other law book library in close proximity to the Charlottesville courthouse of this Court besides the University's Law Library.

69.    The time, place and manner regulation such as the University's new policy barring all members of the public from the Law School Library for an 18-day period, to start, is pretext for barring plaintiffs for a limited, but sufficient time period to cause them grave injury.

70.    Allowing all members of the public to be inside the library between the dates of December 2 and 20, 2024, just as before, will have no detrimental bearing on the ability of law students to succeed on their exams, as there is plenty of space for all, as depicted in Exhibits 1 - 3 hereto.

71.    Granting an exception only for plaintiffs to be inside the library between the dates of December 2 and 20, 2024, just as before, will have no detrimental bearing on the ability of law students to succeed on their exams, as there is plenty of space for plaintiff Claude David Convisser to work there where he has since July 2024, as depicted in Exhibits 1 - 3 hereto.

## COUNT 2

### Denial of Plaintiff's Substantive Due Process Right to Gain Access to the Public Forum of the Law Library

### 42 U.S.C. § 1983

72.    Plaintiffs reiterate paragraphs 1 – 71 and these paragraphs are incorporated as if re-stated herein.

73.    Plaintiffs have a substantive due process and equal protection right to be inside the Law Library to conduct activities and exercise rights to petition the Government and thereby exercise their right to petition and to free speech which rights are consistent with the nature of the Library and consistent with the Commonwealth of Virginia's intent, by its University, in designating the Library as a public forum.  Since Virginia designated the public forum of the University's Law Library to expressive activity limited to engaging in the quiet acquisition of legal knowledge, and plaintiffs wish nothing other than to participate in this form of knowledge acquisition and thereby, plaintiffs fall within the class of people intended to benefit from this designated public forum, they have an absolute right to be inside and engaging in such activity.

74.    The University's deprivation of plaintiffs' substantive due process interest in being inside the Law Library during hours proscribed by the new policy of barring all members of the public from the Law School Library for an 18-day period, to start, is causing them injury.

## COUNT 3

**Denial of Plaintiff's Substantive Due Process Right
to Gain Access to the University's Hospital and Medical School Complex**

**42 U.S.C. § 1983**

75.     Plaintiffs reiterate paragraphs 1 – 74 and these paragraphs are incorporated as if re-stated herein.

76.     Plaintiffs have rights to free speech, to petition the Government by this Court for redress of grievances, and to substantive due process in visiting offices in the University's Hospital and Medical School Complex to discuss in person and without a prior appointment their need for a medical expert witness and for related medical services and advice, just as all other lawyers, businessmen, medical professionals, and ordinary citizens have rights to wander the halls of those public buildings in pursuit of their medical needs.

77.     Barring plaintiffs from exercising their constitutional rights to access to the public spaces, offices and clinics of the University's Hospital and Medical School Complex was in specific, unconstitutional discrimination against the viewpoint that defendant's authorities were aware plaintiffs were preparing to communicate to this Court.  Such viewpoint discrimination was at least a motivating factor in the University Police's issuing to plaintiff Claude David Convisser the no trespass order, as the grounds generated by the receptionist were pretext seeking to hide this viewpoint discrimination motive.

78.     Plaintiffs suffered damages as a result of the no trespass order which deprived them of the ability to exercise their constitutional rights thereafter and prepare a motion for injunctive relief backed by a medical expert opinion.

79.     Plaintiffs' damages under this Count 3 are ongoing, continuing and deepening, as the no trespass order prevents them from being able properly to initiate and pursue contact and

communications in person with other offices besides the Digestive Health Clinic in the
University's Hospital and Medical Complex without an advance appointment as needed in
relation to other and additional medical aspects of the Exxon Mobil lawsuit in the future.  Such
future restrictions also impair plaintiff Claude David Convisser's ability to secure medical care
he needs and to be in personal contact with his friends on the faculty of Medicine.  For instance,
he had a very bad case of poison ivy that he would have liked to directly visit the University's
dermatological clinic for treatment of, but had to go without because he did not have time to wait
in the Hospital Emergency Room for triage and a referral appointment.  This lack of proper
treatment caused him much pain, itching and suffering.  He also would like to be able to, and
may if appointed as their legal guardian have need to, confer in person without necessarily
having an advance appointment with University medical professionals and clinics concerning
care for his elderly parents who reside in an assisted living home in Charlottesville.

### RELIEF REQUESTED

80.   Plaintiffs reiterate paragraphs 1 – 79 above and these paragraphs are incorporated
as if re-stated herein.

81.   Plaintiffs request emergency, temporary, preliminary, and final injunctive relief
against the University.

82.   Plaintiffs request payment of their reasonable attorney's fees and legal costs
pursuant to Title 42, United States Code section 1988(b) and (c).

83.   Plaintiffs request payment by the University of compensatory, consequential and
remedial damages consisting of and in the amount of their injured and lost damages claim in the
Exxon Mobil lawsuit proven at trial in this lawsuit.

## **PRAYER FOR RELIEF**

Plaintiff Claude David Convisser and plaintiff POP Diesel Africa, Inc., by counsel,

respectfully request that this Court grant the relief they have pleaded above and such further

relief as is just.

Respectfully submitted,


CLAUDE DAVID CONVISSER
and POP DIESEL AFRICA, INC.,
Plaintiffs, by counsel


Claude David Convisser,
Attorney at Law
Virginia State Bar No. 33799
P.O. Box 7206
Charlottesville, Virginia 22906
5013 South Louise Ave., # 262
Sioux Falls, South Dakota 57108
Tel. 703-438-0071
cdc@popdiesel.com


Further your declarant affirmeth and sayeth naught:


_____          Charlottesville, Virginia
Claude David Convisser                   December 1, 2024